UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO ROMAN,<br><br>                                    Plaintiff,<br><br>             v.<br><br>MIKE KNOWLES, et al.,<br><br>                                    Defendant. | Civil No.    07cv1343-JLS (POR)<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**<br><br>**[ECF No. 99]** |

## I. INTRODUCTION

On October 18, 2010, Plaintiff Isidro Roman, a state prisoner proceeding *pro se*, filed a Fourth Amended civil rights Complaint[1] pursuant to 42 U.S.C. § 1983 against the following Defendants: M.D. Greenwood, correctional lieutenant at the California State Prison at Calipatria ("CSP-CAL"); F.L. Martinez, correctional sergeant at CSP-CAL; A. Hernandez, K. Teeters, J. Nutt, C. Rodiles, Rush, Barajas, Ibarra, Alderete, Lopez, Gonzales, and P. Rodriguez-Toledo, correctional officers at CSP-CAL.  (ECF No. 95.)  Plaintiff sues defendants solely in their individual capacities. (*Id*.)  In his complaint, Plaintiff alleges Defendants violated his (1) Eighth Amendment right to be free from cruel and unusual punishment, (2) First Amendment right to be free from retaliation, and (3) Fourteenth Amendment right to Due Process.  (ECF No. 95 at 11-14.)

///

///

---

[1]Hereinafter referred to as "4AC."

On December 1, 2010, Defendants filed a Motion to Dismiss Plaintiff's Fourth Amended Complaint.  (ECF No. 99.[2])  Defendants seek dismissal on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies as to certain claims and Defendants, as required by law; (2) To the extent that Plaintiff bases his Eighth Amendment claim against Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and Barajas on deliberate indifference or any ground other than excessive force, that claim is beyond the scope of claims allowed by the Court's order of August 5, 2010; (3) Plaintiff's First Amendment retaliation claim against Defendant Greenwood is beyond the scope of claims allowed by the Court's order of August 5, 2010; (4) Plaintiff's Due Process claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); (5) Alternatively, Plaintiff has failed to state a Due Process claim, because he had no liberty interest at stake in his administrative hearing.  (MTD at 4-10.)

On December 27, 2010, Plaintiff filed an Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint.  (ECF No. 101.)

On January 31, 2011, Defendants filed a Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint.  (ECF No. 104.)

After thorough review of the parties' papers and all supporting documents, this Court RECOMMENDS Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

## II. BACKGROUND

**A.    <u>Plaintiff's Factual Allegations</u>**

Plaintiff is an inmate at the California Substance Abuse Treatment Facility and State Prison at Corcoran, California.  Plaintiff files this suit, complaining of events which he claims occurred while he was an inmate at Calipatria State Prison ("CSP-CAL").

Plaintiff alleges that on September 15, 2005, he requested to be placed in Administrative Segregation due to threats against him by other inmates.  His request was approved that day, and Defendants Martinez and Hernandez escorted him to his assigned cell in Administrative Segregation.  (4AC  ¶¶ 17-18.)  Plaintiff was classified as a "Sensitive Needs" inmate, and this

---

[2]Hereinafter referred to as "MTD."

classification required that he not be celled with certain other inmates.  (4AC ¶ 20.)  Plaintiff alleges this classification was omitted from the order to place him in Administrative Segregation.  Plaintiff alleges this omission was intentional, and that Defendants Martinez and Hernandez placed him in a cell with an incompatible inmate from the general population.  (4AC ¶ 22.)  Plaintiff alleges that soon after his placement in that cell, the other inmate attacked him.  (4AC ¶ 25.)  He claims that during the attack, which continued for several minutes, Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and Barajas simply watched as it continued.  (*Id.*)  These Defendants finally subdued the other inmate and ordered Plaintiff to the floor.  (4AC ¶ 26.)  Plaintiff contends Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and Barajas then proceeded to use excessive force on him, jumping on his back, twisting his arms and legs, elbowing his back and rib cage, and banging his head against the concrete floor.  (4AC ¶¶ 27-28.)  Defendants Martinez and Hernandez wrote rules violations reports charging Plaintiff with initiating the violence.  Plaintiff claims that this charge was false, and he was eventually exonerated of the charge.  (4AC ¶ 30.)  Plaintiff filed a grievance in connection with this incident.  (4AC ¶ 31.)

Plaintiff also alleges Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and Barajas conspired with Defendants Rush, Ibarra, Alderete, Lopez, Gonzalez, and Rodriguez-Toledo to interfere with Plaintiff's First Amendment right to file a grievance.  Plaintiff contends they did so by calling him names such as "child molester," "rat," and "snitch" in front of other inmates.  (4AC ¶ 29.)  Plaintiff claims that as a result of this name-calling, he was again attacked by another inmate on November 15, 2005, and that Defendant Rodriguez-Toledo witnessed the attack.  (4AC ¶ 32.)  As a result of that incident, Plaintiff was issued another rules violation report, charging him with "mutual combat."  (4AC ¶ 33.)  At the hearing on this charge, Plaintiff claims Defendant Greenwood, the Senior Hearing Officer, offered to dismiss the "mutual combat" charge if Plaintiff would drop his grievance arising from the September 15, 2005 incident.  (4AC ¶ 34.)  He contends that because he declined this offer, he was denied the right to present evidence.  Plaintff was found guilty of the charge.  (4AC ¶¶ 35-37.)

Plaintiff alleges that Defendants Rush, Barajas, Ibarra, Gonzales, Alderete, Lopez, and Rodriguez-Toledo continued to call him names in front of other inmates, which caused other inmates

1  to throw urine and excrement on him during any movement from his cell or other escort.  (4AC  ¶
2  38.)

3  **B.      Procedural Background**

4       On July 23, 2007, Plaintiff filed a complaint against Defendants Adams, Crones, Giurbino,

5  and Zamora.  (ECF No. 1).  On August 6, 2007, the Court dismissed the case without prejudice for

6  failure to pay filing fees and/or move to proceed in forma pauperis.  (ECF No. 2).  On August 8,

7  2007, Plaintiff filed a first amended complaint against Defendants Knowles, Bourland, Cobbs,

8  Paramo, Moncayo, Butler, Arline, Bell, Carrillo, Din, Newman, Greenwood, Hinshaw, Cake,

9  Martinez, Lane, Hernandez, Teeters, Nutt, Rodiles, Rush, Barajas, Ibarra, Alderete, Lopez,

10 Gonzales, Rodriguez-Toledo, Terrones, DOES 1-100, Adams, Giurbino, and Zamora.  (ECF No. 4).

11 On October 18, 2007, the Court sua sponte dismissed Plaintiff's first amended complaint without

12 prejudice for failure to state a claim.  (ECF No. 8).

13      On December 11, 2007, Plaintiff filed a second amended complaint against Defendants

14 Bourland, Paramo, Butler, Bell, Din, Newman, Greenwood, Martinez, Hernandez, Teeters, Nutt,

15 Rodiles, Rush, Barajas, Ibarra, Alderete, Lopez, Gonzales, Rodriguez-Toledo, Terrones, Giurbino,

16 and Zamora.  (ECF No. 13.)  On March 28, 2008, Defendants filed a Motion to Dismiss Plaintiff's

17 Complaint.  (ECF No. 41.)  On January 26, 2009, the Court issued a Report and Recommendation

18 (ECF No. 55)  that Defendants' Motion to Dismiss be granted, which the Honorable Janis L.

19 Sammartino adopted in part, and rejected in part.  (ECF No. 64.)

20      On August 21, 2009, Plaintiff filed a Third Amended Complaint against Defendants

21 Knowles, Giurbino, Zamora, Bourland, Paramo, Butler, Bell, Newman, Greenwood, Martinez,

22 Hernandez, Teeters, Nutt, Rodiles, Rush, Barajas, Ibarra, Alderete, Lopez, Gonzales, and Rodriguez-

23 Toledo.  (ECF No. 69.)  On September 4, 2009, Defendants filed a Motion to Dismiss Plaintiff's

24 Third Amended Complaint.  (ECF No. 70.)  On June 24, 2010, the Court issued a Report and

25 Recommendation (ECF No. 88)  that Defendants' Motion to Dismiss be granted in part and denied

26 in part, which the Honorable Janis L. Sammartino adopted in its entirety.  (ECF No. 90.)

27 ///

28 ///

# III. DISCUSSION

**A.**     <u>**Standard of Review**</u>

   **1.**     **Rule 12(b)(6) Motions to Dismiss**

   A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). "The old formula –- that the complaint must not be dismissed unless it is beyond doubt without merit –- was discarded by the *Bell Atlantic* decision [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)]." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

   A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

   The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Bell Atl. Corp. v. Twombly*, 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

   The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *see Halkin v. VeriFone, Inc.*, 11 F.3d 865, 868 (9th Cir. 1993); *see also Cholla Ready Mix*, 382 F.3d at 973 (citing *Clegg v. Cult*

*Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside the pleadings.  *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th Cir. 1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  *Schneider*, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  *Id*. (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  *Parks Sch. of Bus.*, 51 F.3d at 1484 (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

### 2.    Standards Applicable to Pro Se Litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a pro se civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations

are not sufficient to withstand a motion to dismiss."  *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733

F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to

state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity

overt acts which defendants engaged in that support the plaintiff's claim."  *Jones*, 733 F.2d at 649

(internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it

determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v.

Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*,

809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a pro se civil rights complaint may be dismissed,

the court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim-Panahi*,

839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of

leave to amend is appropriate.  *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### 3.    Stating a Claim Under 42 U.S.C. § 1983

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person

acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the

plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United

States.  42 U.S.C.A. § 1983 (West 2003); *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th

Cir. 1986).

### B.    Eighth Amendment: Deliberate Indifference to Safety

Plaintiff alleges Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and Barajas

violated Plaintiff's right to be free from cruel and unusual punishment guaranteed by the Eighth

Amendment.  (4AC ¶¶ 41-51.)  Specifically, Plaintiff contends Defendants were deliberately

indifferent to his safety.  (4AC ¶¶ 46-48.)  Plaintiff claims Defendants Hernandez and Martinez

purposefully placed him with an incompatible cell mate, which led to a physical attack.  (4AC ¶¶

21, 22, 24, 25.)  Plaintiff also claims Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and

Barajas were deliberately indifferent to other inmates' attacks on him (4AC ¶¶ 25, 32), and verbally

harassed him in a manner aimed at, and succeeding in, provoking other inmates to attack him.  (4AC

¶¶ 29, 31, 32, 38.)

1      Defendants allege all of Plaintiff's Eighth Amendment claims based on any ground other

2   than excessive force, such as Plaintiff's deliberate indifference to safety claims,[3] are beyond the

3   scope of permissible claims prescribed by the Court's August 5, 2010 Order.[4]  (MTD at 7-8.)

4      In order to determine whether Plaintiff is barred from alleging a deliberate indifference to

5   safety claim, the Court must review Plaintiff's and Defendants' previous pleadings, as well as the

6   Court's previous Report and Recommendation.  In his Third Amended Complaint, Plaintiff alleged

7   Defendants were deliberately indifferent to his safety.  (ECF No. 69  ¶¶ 30, 34, 38, 41, 46, 49.)  In

8   their Motion to Dismiss Plaintiff's Third Amended Complaint, Defendants never moved to dismiss

9   Plaintiff's Eighth Amendment claims based on deliberate indifference to safety.  (ECF No. 70.)

10   Rather, Defendants moved to dismiss Plaintiff's claims arising out of deliberate indifference to

11   Plaintiff's medical needs.  (ECF No. 70 at 2.)  Because Defendants never moved to dismiss

12   Plaintiff's deliberate indifference to safety claims, the Court did not address them in its Report and

13   Recommendation Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's

14   Third Amended Complaint.  (ECF No. 88.)  However, the Court failed to list Plaintiff's deliberate

15   indifference to safety claim in its list of remaining causes of action found in its June 24, 2010 Report

16   and Recommendation.  (ECF No. 88 at 20.)  In light of the fact Plaintiff raised deliberate

17   indifference to safety claims in both his Third and Fourth Amended Complaints, for example his

18   claim of placement in the wrong cell (4AC  ¶¶ 20-24,) and that the Court has never granted a motion

19   to dismiss these alleged violations, Plaintiff is not barred from raising these claims.  Accordingly,

20   the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims

21   unrelated to excessive force be **DENIED**.

22   ///

23

24      [3]The Court notes it will not address any claims Plaintiff might raise regarding deliberate
    indifference to medical needs, as this claim was properly dismissed without further leave to amend in
25   the Court's June 24, 2010 Report and Recommendation.  (ECF No. 88 at 19.)

26      [4]Judge Sammartino's August 5, 2010 Order adopted this Court's June 24, 2010 Report and
    Recommendation, which held that "[p]laintiff's only remaining causes of action are the following: (1)
27   First Amendment Claim for Retaliation against Defendants Rush, Barajas, Ibarra, Alderete, Lopez,
    Gonzalez, Rodriguez-Toledo, Martinez, Hernandez, Teeters, Nutt, and Rodiles; and (2) Eighth
28   Amendment Claim for Excessive Force against Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles,
    and Barajas."  (ECF No.  88 at 20.)

## C.     <u>Failure to Exhaust Administrative Remedies</u>

In their motion to dismiss Plaintiff's Fourth Amended Complaint, Defendants contend Plaintiff failed to meet the exhaustion requirement for the following claims: (1) intentional placement in the wrong cell; (2) Eighth Amendment excessive force by Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, and Barajas; (3) retaliation for filing grievances by Defendants Martinez, Hernandez, Teeters, Nutt, Rodiles, Barajas, Rush, Ibarra, Alderete, Lopez, Gonzales, and Rodriguez-Toledo; (4) falsifying rules violation reports by Defendant Martinez on September 15, 2005; or (5) falsifying rules violation by either Defendant Martinez or Defendant Hernandez on November 15, 2005.  The Court shall address each contention separately below.

Currently, under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under...[42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in a jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996); *see also McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required").  *But see* 42 U.S.C. § 1997e(c)(2) (where court concludes claim is frivolous, fails to state a claim, or is brought against defendants who are immune from suit for damages, the court may dismiss without first requiring exhaustion).  Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  The exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence.  *See Porter v. Nussle*, 122 S. Ct. 983, 986-92 (2002).

Failure to exhaust is an affirmative defense which defendants must raise.  *See Whatt v. Terhune*, 280 F.3d 1238, 1245-46 (9th Cir. 2002) ("*Wyatt* I").  Although the issue can be resolved on a motion to dismiss, this is only true where there are no factual disputes.  *See id*. at 1246-47.  And "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  *Wyatt v. Terhune*, 305 F.3d 1033 (9th Cir. 2002) ("*Wyatt* II"), *pet. For rehr'g en banc filed*, (Oct. 7, 2002 [No. 00-1656]).  A prisoner may amend her or his complaint to allege only exhausted claims.  *See Bennett v. King*, 293 F.3d 1096,

1   1098 (9th Cir. 2002).  Failure to exhaust is not an absolute affirmative defense, as prisoners may still

2   raise unexhausted claims if circumstances outside of their control render administrative remedies

3   unavailable.  *See Nunez v. Duncan*, 591 F. 3d 1217, 1223 (9th Cir. 2010).

   **1.      Failure to Exhaust Plaintiff's Eighth Amendment Excessive Force Claim**

5          In his Fourth Amended Complaint, Plaintiff claims Defendants Martinez, Hernandez,

6   Teeters, Nutt, Rodiles, and Barajas used excessive force on him by attacking him after removing an

7   assailant from his cell.  (4AC  ¶¶ 27, 28.)

8          In their Motion to Dismiss Plaintiff's Fourth Amended Complaint, Defendants contend

9   Plaintiff's claim of a constitutional violation arising under the cruel and unusual punishment clause

10  of the Eight Amendment is barred by Plaintiff's failure to exhaust all of the administrative remedies

11  available to him.  (ECF No. 99-1 at 4-7.)  Specifically, Defendants allege Plaintiff did not reach the

12  third, or director's, level of review for his Eighth Amendment excessive force claim.  (ECF No. 99-1

13  at 4-5.)

14         In his Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint,

15  Plaintiff maintains he filed a grievance (CDC 602) complaining of the use of excessive force, which

16  was returned to Plaintiff after being screened out, and was described as defective for stating multiple

17  claims.  (ECF No. 101 at 3-4.)  Plaintiff claims he cured the defect promptly and filed each claim on

18  a separate CDC 602 form, including a claim of excessive force, but received the forms back only a

19  few days later with no response, no evidence they had been screened-out, and with a large boot print

20  on the face of each appeal.  (ECF No. 101 at 4.)  Plaintiff contends that a couple of days after

21  receiving the seemingly ignored appeals, they were stolen from his cell while he was on the exercise

22  yard.  (ECF No. 101 at 4.)  Plaintiff alleges all of the guards claimed ignorance to the theft, and in

23  the following weeks none of the prison staff would provide Plaintiff with new forms so that he could

24  resubmit his appeal.  (ECF No. 101 at 4-5.)  Plaintiff was eventually able to file two appeals

25  complaining of prison staff misconduct, both of which were completely exhausted, however neither

26  appeal raised a claim of use of excessive force.[5]  (ECF No. 99-2 at 4.)  Plaintiff contends his

27

28          [5]These grievances (Appeal Log Nos. CAL-06-00275 and CAL-05-02335) are discussed in
    section D *infra*.

1    inability to exhaust the excessive force claim administratively should not be grounds for dismissal

2    because the theft of his original appeal forms and prison staff's refusal to furnish new ones rendered

3    the administrative remedies unavailable.  (ECF No. 101 at 6-8.)

4         In their Response to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's

5    Fourth Amended Complaint, Defendants contend Plaintiff should not be excused from satisfying the

6    exhaustion requirement by reason of unavailable administrative remedies because they allege this is

7    an implausible argument.  (ECF No.104 at 3-6.)  In support of their implausibility claim, Defendants

8    highlight Plaintiff's failure to raise the excessive force claim at any point after the alleged theft,

9    despite his ability to raise two other appeals, which were eventually exhausted administratively.

10   (ECF No. 104 at 3.)  Defendants further suggest evidence does not support Plaintiff's averment that

11   he filed an initial appeal that was subsequently screened-out because the prison keeps a record of

12   every screened-out document, and Plaintiff's record reflects no such documents.  (ECF No. 104 at 3-

13   4.)

14        Case law supports Plaintiff's notion that the failure to exhaust administrative remedies is not

15   an impermeable bar to potential civil right claims.  *See Nunez v. Duncan*, 591 F. 3d 1217, 1223 (9th

16   Cir. 2010) ("*Nunez*") (holding failure to exhaust is excusable if the prisoner is prevented from

17   pursuing administrative remedies, even if it is through prison staff negligence, not an overt act of

18   obstruction).  In Nunez, "[the plaintiff's] failure to timely exhaust his administrative remedies was

19   excused because he took reasonable and appropriate steps to exhaust his Fourth Amendment claim

20   and was precluded from exhausting, not through his own fault but by the Warden's mistake." *Nunez*,

21   591 F.3d at 1224.   In *Nunez*, the prisoner filed a grievance relating to a strip search and in response

22   was quoted an incorrect prison policy that purportedly authorized the search.  *Nunez*, 591 F.3d at

23   1220.  When the prisoner sought a copy of the policy, he was informed that the policy he sought

24   (which did not relate to strip searches) was unavailable to inmates, and "the mistake led [the

25   prisoner] on an almost ten-month wild goose chase," at the end of which, the prisoner assumed his

26   administrative remedies were exhausted as he was denied further access to the information sought.

27   *Id*. at 1226.  The Court found this rendered administrative remedies unavailable, and as such

28   exhaustion was excused.  *Id.*

///

Here, Plaintiff's claim does not meet the exception to the rigid requirement of administrative exhaustion.[6] Plaintiff's excessive force claim presents a different factual scenario than that which excused the prisoner's exhaustion requirement in *Nunez*. Unlike Nunez, Plaintiff does not plead facts sufficient to establish an intentional and systematic obstruction to administrative remedies that, on its own, would render those remedies unavailable, and excuse his inability to exhaust them. Plaintiff's pleadings themselves contain facts sufficient to establish that these remedies were only temporarily unavailable and thus exhaustion should not be excused. On November 27, 2005, Plaintiff filed an appeal alleging misconduct by some of the same Defendants named in his excessive force claim, arising from incidents that occurred on the same day as the alleged use of excessive force.[7] (ECF No. 101 at 5.) These appeals were eventually exhausted, evidencing Plaintiff's capability and willingness to exhaust appeals arising from the same date and involving the same people. Therefore, unlike the prisoner in *Nunez*, Plaintiff did not take the "reasonable and appropriate steps" to exhaust his administrative remedies because he did not follow through with filing the grievance, as he did with other appeals, despite initial hindrances.

Further, Contrary to *Nunez*, Plaintiff's other successfully exhausted appeals suggest Plaintiff is at least partially culpable for failing to reassert his excessive force appeal. Although Plaintiff has plead facts suggesting prison officials improperly deterred him from pursuing administrative remedies, he did not include the factual allegation that his initial excessive force grievance was mishandled and stolen until his Opposition to Defendants' Motion to Dismiss. (ECF No. 101 at 3-5.) Plaintiff also alleged for the first time in his Opposition that his initial grievance was screened out (ECF No. 101 at 3-4), a statement that runs contrary to one of the Defendants' declarations.

---

[6]*See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citing *McCarthy* 503 U.S. at 145) "Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects 'administrative agency authority.' Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.' Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court."

[7]This appeal alleged Defendants Martinez and Hernandez intentionally placed Plaintiff with an incompatible cell mate, leading to an attack. (ECF No. 101 at 5.)

(ECF No. 105.)  *Nunez* emphasized that unavailability cannot be "through [the prisoner's] own fault" (*Nunez* 591 F.3d at 1224), but it appears that Plaintiff's own actions played a significant role in his failure to exhaust this claim administratively, and his delay in notifying the court of his excuse for failing to exhaust.  Therefore, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Eighth Amendment excessive force claim be **GRANTED**.

### 2.    Failure to Exhaust Plaintiff's First Amendment Retaliation Claim as Against All Defendants But Defendant Greenwood[8]

In his Fourth Amended Complaint, Plaintiff contends Defendants Rush, Barajas, Ibarra, Alderete, Lopez, Gonzalez, Rodriguez-Toledo, Martinez, Hernandez, Teeters, Nutt, Rodiles, and Greenwood retaliated against him in violation of his First Amendment rights through intimidation, abuse, and harassment.  (4AC ¶¶ 29, 31, 36, 37, 38, 52-60.)  Plaintiff alleges these Defendants, in response to Plaintiff's decision to file an appeal against them, retaliated by abusing him verbally in a way calculated to provoke other inmates to attack him.  (4AC ¶¶ 29, 31, 38.)

In their Motion to Dismiss Plaintiff's Fourth Amended Complaint, Defendants contend Plaintiff failed to exhaust his administrative remedies regarding his First Amendment retaliation claim against Defendants Rush, Barajas, Ibarra, Alderete, Lopez, Gonzalez, Rodriguez-Toledo, Martinez, Hernandez, Teeters, Nutt, and Rodiles because there is no record of a third level appeal accusing these Defendants of retaliation.  (MTD at 6.)

In his Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint, Plaintiff alleges he included a retaliation claim in his administrative appeal, which does not specifically name all Defendants named in the present claim, but is sufficiently specific to put them all on notice of his grievance and exhaust the claim.  (ECF No. 101 at 16.)

In their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint, Defendants contend Plaintiff did not exhaust his retaliation claim because he did not raise the issue of retaliation in his initial grievance, or name all of the Defendants herein accused.  (ECF No. 104 at 2-3.)  Defendants argue that these deficiencies amount to a per se failure

---

[8]The Motion to Dismiss Plaintiff's Fourth Amended Complaint alleges that the First Amendment retaliation claim against Defendant Greenwood is barred because it is outside the scope of permissible claims.  This argument is considered in section D *infra*.

1   to exhaust the claim under Section 3084.1 of the California Code of Regulations.

2          *a.*    *Factual Background*

3         The disputed grievance process began when Plaintiff submitted the standard California

4   prisoner appeal form (CDC Form 602) challenging a rules violation Plaintiff incurred for mutual

5   combat with his cell mate.  (ECF No. 101 at 26, 28.)  The appeal, filed on November 27, 2005, also

6   accused Defendants Martinez and Hernandez of intentionally placing Defendant with an

7   incompatible cell mate, leading to an attack on Plaintiff.  (*Id.*)  Retaliation is mentioned in this initial

8   form in the "Action Requested" section where Plaintiff seeks to prevent acts of retaliation "against

9   [him]self *in the future*."  (ECF No. 101 at 26, emphasis added.)  According to Plaintiff's Fourth

10  Amended Complaint, he was attacked on November 15, 2005 because of Defendants' retaliation.

11  (4AC  ¶ 32.)  On February 14, 2006, the first level review, which primarily discussed the allegation

12  of placing Plaintiff in the improper cell, was partially granted.  (ECF No. 101 at 32.)  On March 27,

13  2006, the second level of review, also dealing only with the allegation of Plaintiff's improper cell

14  placement, was also partially granted.  (ECF No. 101 at 33-34.)  After Plaintiff's appeal reached the

15  third, or director's, level of review, Plaintiff submitted an addendum to his initial 602 form on April

16  7, 2006, which included allegations of retaliation against some of the Defendants by name and

17  others through incorporation.  (ECF No. 101 at 29-30.)  Plaintiff's appeal was eventually denied at

18  the director's level on June 27, 2006.  (ECF No. 101 at 35-36.)  The director's level appeal decision

19  addressed only Plaintiff's improper placement claim, and it is unclear whether the reviewer had

20  access to Plaintiff's April 7, 2006 addendum because retaliation is not mentioned.  (ECF No. 101 at

21  35.)

22         *b.*    *The Law*

23        The level of specificity of claims and parties required to exhaust an administrative appeal has

24  been subject to some judicial scrutiny.  In *Jones v. Bock* (549 U.S. 199 (2007) ("*Jones*")), the

25  Supreme Court held that a prisoner did not fail to properly exhaust an administrative remedy

26  because of the lack of specifics in the initial grievance form.  *Jones* 549 U.S. at 219.  In so doing, the

27  Court based its argument on the lack of guidelines requiring more formality in the federal legislation

28  that mandates exhaustion, as well as the prison's own lack of guidance as to what specifics need to

be included in the initial grievance.  *Id*. At 218.  Defendants have cited a California statute that

appears to give very explicit guidelines :

> Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602, Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level.

CAL. CODE REGS., TIT. 15, § 3084.1(b).  However, based upon a review of the regulation, the Court

notes the cited language was not yet in effect when Plaintiff filed his inmate grievances.

Case law interpreting the exhaustion requirements in California suggests inmates are not held

to rigid standards when detailing their claims in administrative appeals.  *See Butler v. Adams*, 397

F.3d 1181, 1183 (9th Cir. 2005) ("*Butler*") (holding that a disabled California inmate who filed a

grievance requesting reasonable modifications or accommodation under the ADA had exhausted his

administrative remedies under 42 U.S.C. § 1997 e(a) by completing the form the prison provided

titled "Reasonable Modification or Accommodation Request," which only asked the prisoner to

"describe his disability," "describe the problem," and to declare "what specific modification or

accommodation is requested," but "did not require identification of specific persons," by completing

the form, and thereafter by "taking all the steps of the administrative process, [the plaintiff] achieved

the purposes of the PLRA's exhaustion requirement" because he "availed himself of the

administrative process the state gave him." and "the PLRA does not require more."); *see also Gomez

v. Winslow*, 177 F. Supp. 2d 977, 983, 985 (N.D. Cal. 2001) ("*Gomez*") (holding that California

prisoner need not provide prison officials with a "preview of his lawsuit by reciting every possible

theory of recovery or every factual detail that might be relevant" in his CDC 602 appeal.  The

administrative grievance need only "put [the CDC] on notice of facts it should discover during its

investigation of the claim."); *Irvin v. Zamora*, 161 F. Supp. 2d 1130, 1134-35 (S.D. Cal. 2001)

(holding that so long as the plaintiff's grievance "present[s] the relevant factual circumstances

giving rise to a potential claim," the basic purposes of the exhaustion requirement are fulfilled).

    *c.*    *Analysis*

Under the relatively relaxed standards set out in *Gomez*, Plaintiff did not need to give prison

officials a "preview of his lawsuit by reciting every possible theory of recovery or every factual

detail that might be relevant" in his initial 602 appeal (*Gomez,* 177 F. Supp. 2d at 983), but only

needed to describe the facts that gave rise to potential claims he might raise.  Plaintiff's initial

grievance described the circumstance, that of placing him in the wrong cell, which would lead to

each and every claim Plaintiff has raised in his current Complaint.  Given that Plaintiff would

eventually include a specific allegation of retaliation in his grievance before it reached the final level

of review, the Court holds Plaintiff's claim should not be precluded because Plaintiff failed to raise

this particular claim in his initial grievance.

      As *Butler* suggests, the prison grievance forms often call for only a general description of

grievance, so to require more detailed responses would be inherently unfair.  *See Butler,* 397 F.3d at

1193.  The format of the CDC Form 602 Inmate/Parolee Appeal form (inmates are permitted one

paragraph, plus one extra sheet in which to frame their "problem") suggests that the purpose of the

form is to address the problem from the inmates perspective, not to require the inmate to name

defendants with particularity, or state potential causes of action.  *See* CAL. CODE REGS., tit. 15, §

3084.2(a).  Because Plaintiff described the relevant factual circumstances that gave rise to all his

related claims, and plead them sufficiently given the available medium, he provided the prison

officials with adequate notice and exhausted the retaliation claim.  Accordingly, the Court

RECOMMENDS Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claims as

against all Defendants but Defendant Greenwood be **DENIED**.

**D.**      **First Amendment: Retaliation Claim Against Defendant Greenwood**

      Plaintiff's Fourth Amended Complaint contains an allegation that each named Defendant,

including Defendant Greenwood, violated his First Amendment right against retaliation.  (4AC ¶¶

52-60.)

      Defendants, in their Motion to dismiss Plaintiff's Fourth Amended Complaint, contend

Plaintiff's retaliation claim against Defendant Greenwood is beyond the scope of permissible claims

prescribed by the Court's August 5, 2010 Order.  (MTD at 8.)

      Plaintiff's Opposition to Defendants Motion to Dismiss Plaintiff's Fourth Amended

Complaint responds to Defendants' arguments against retaliation claims as to every defendant

except Defendant Greenwood, presumably acknowledging Defendants' scope claim.  (ECF No. 101

1    at 16.)

2    ///

3          On August 5, 2010, Judge Sammartino adopted this Court's Report and Recommendation

4    from June 24, 2010, which granted Defendants' Motion to Dismiss Plaintiff's constitutional claims

5    against Defendant Greenwood without further leave to amend.  (ECF No. 84 at 19.)  As this

6    retaliation claim is derived from Plaintiff's constitutional First Amendment rights, it is barred per the

7    June 24, 2010 Report and Recommendation.  Based thereon, the Court RECOMMENDS

8    Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim as against Defendant

9    Greenwood be **GRANTED.**

10   **E.**      **Fourteenth Amendment: Due Process Claim Against Defendant Greenwood**

11         Plaintiff contends the manner in which Defendant Greenwood conducted the disciplinary

12   hearing regarding the November 15, 2005 incident violated his rights under the Due Process Clause

13   of the Fourteenth Amendment.  (4AC ¶¶ 61-69.)

14         Defendants contend Plaintiff's due process claim is barred by *Heck v. Humphrey*, or,

15   alternatively, Plaintiff failed to state a due process claim because he had no liberty interest at stake

16   in his administrative hearing.  (MTD at 8-10.)

17         In his Opposition to Defendants' Motion to Dismiss, Plaintiff argues the favorable

18   termination rule set out in *Heck* does not apply to him because he is serving a life sentence, and,

19   alternatively, there was a liberty interest at stake in his administrative hearing.  (ECF No. 101 at 19-

20   23.)

21         In their Reply to Plaintiff's Opposition, Defendants argue that even life prisoners cannot

22   raise due process claims under section 1983 unless and until their conviction or sentence has been

23   invalidated.  (ECF No. 104 at 6.)  Alternatively, they contend that even if the due process claim is

24   not barred, Plaintiff's placement in administrative segregation did not implicate a protectable liberty

25   interest.  (ECF No. 104 at 6-7.)

26         *a.*     <u>*Heck v. Humphrey*</u>

27         In *Heck v. Humphrey*, the Supreme Court held that "in order to recover damages for

28   allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose

unlawfulness could render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a writ of habeas corpus."  512 U.S. 475, 486-87 (1994).  If a Plaintiff's Complaint seeks damages based on claims which would "necessarily imply the invalidity" of an underlying conviction or sentence, *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994), and he has not shown that the conviction or sentence has already been invalidated, either by way of direct appeal, state habeas or pursuant to 28 U.S.C. § 2254, a § 1983 claim for damages cannot be maintained and the Complaint must be dismissed without prejudice.  *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (finding that an action barred by *Heck* has not yet accrued and thus, must be dismissed without prejudice so that the plaintiff may reassert his §1983 claims if he ever succeeds in invalidating the underlying conviction or sentence); *accord Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997).  This has come to be known as the "favorable termination" rule.  *See Heck*, 512 U.S. at 492.

In other words, if a criminal conviction, prison disciplinary hearing or other judgment "arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which the section 1983 damages are sought, the 1983 action must be dismissed."  *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).  *Edwards v. Balisok,* 520 U.S. 641, makes clear that this reasoning applies whether the prisoner challenges the conviction underlying his original sentence, or a prison administrative ruling which deprives him of good-time credits.  117 S. Ct. 1584, 1587-88 (1997); *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).  Thus, to determine whether *Heck* and *Edwards* bar a claim for damages arising from a prison disciplinary hearing, the court must examine "not the relief sought, but the ground of the challenge." *Miller v. Indiana Dept. of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996).

However, the favorable termination rule "turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir.2003).  *See also Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir.1999) ("[A] § 1983 suit by a prisoner ... challenging the validity of a disciplinary or administrative sanction that does not affect the overall

1  length of the prisoner's confinement is not barred by *Heck*.")

2  ///

3  Here, while Plaintiff was assessed with a forfeiture of good-conduct credits, as a life term

4  prisoner the loss of good-conduct credits will have no effect on Plaintiff's maximum sentence,[9] thus

5  the favorable termination rule is inapplicable to Plaintiff's due process claim.  *See Ramirez*, 334

6  F.3d at 858 ("[W]here ... a successful § 1983 action would not necessarily result in an earlier release

7  from incarceration ... the favorable termination rule of *Heck* and *Edwards* does not apply."); *Tucker*

8  *v. Monroe*, No. 2:06-cv-58, 2007 WL 839993, at *1 (W.D.Mich. Mar.15, 2007) (rejecting a *Heck*

9  bar argument where the plaintiff asserted "that he is serving a parolable life sentence for second

10  degree murder and is not eligible to earn good time or disciplinary credits"); *see also Thomas v.*

11  *Wong*, No. C 09-0733 JSW (PR), 2010 WL 1233909, at *3-4 (N.D.Cal. Mar.26, 2010) (holding that

12  habeas jurisdiction was absent because the disputed rules violation, which imposed a 30-day loss of

13  time credits, did not inevitably affect the duration of petitioner's indeterminate sentence; dismissing

14  the habeas action without prejudice to petitioner bringing his claims in a § 1983 action).

15          *b.*    *Liberty Interest*

16  Plaintiff's due process claim, while not barred by the *Heck* favorable termination rule, was

17  also challenged by the Defendants on the basis that the actions complained of did not amount to a

18  violation of due process.  (ECF No. 99-1 at 9-10.)

19  The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a

20  person of life, liberty, or property without due process of law. *U.S. Const. amend XIV*.  A plaintiff

21  alleging a procedural due process violation must first demonstrate that he was deprived of a liberty

22  or property interest protected by the Due Process Clause and then show that the procedures attendant

23  _____

24  [9]"Nor will the loss of credits have any impact on plaintiff's eligibility for release on parole. Under California law, plaintiff's earned credits may be applied to reduce his minimum eligible parole

25  date (MEPD). *See In re Dayan*, 231 Cal.App.3d 184, 188, 282 Cal.Rptr. 269 (1991); see also CAL.CODE REGS., TIT. 15, § 3000; CAL. PENAL CODE § 190(a). However, plaintiff's MEPD does not set an actual

26  parole release date. Rather, the MEPD determines when plaintiff may appear before the Board of Parole Hearings (BPH) for his first parole suitability hearing. The BPH, in turn, has the exclusive authority to grant plaintiff parole and set any actual parole release date. Thus, as one court has recently explained,

27  [A]ny credits earned [by a prisoner] on his indeterminate life sentences can only affect the ultimate establishment of a MEPD; they can have no real impact on the actual sentence eventually set for [the

28  prisoner] or on his eventual release date on parole, should that time ever come." *Vandervall v. Feltner*, No. CIV S-09-1576 DAD P, 2010 WL 2843425 at *6 (E.D.Cal. July 19, 2010).

upon the deprivation were not constitutionally sufficient.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir.2002); *Brewster v. Bd. of Education*, 149 F.3d 971, 982 (9th Cir.1998).  The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in good-time credits, *see Wolff v. McDonnell*, ("*Wolff*") 418 U.S. 539, 557 (1974); nor does it grant prisoners a liberty interest in remaining in general population, *see Sandin* 515 U.S. at 485-86.  However, in addition to liberty interests that arise directly from the Constitution, courts have long recognized that state prison regulations may give rise to liberty interests that are protected by the Fourteenth Amendment.  *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976); *Wolff*, 418 U.S. at 557-58.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that state law creates liberty interests for prisoners under the Fourteenth Amendment's Due Process Clause only when the deprivation in question (1) restrains the inmate's freedom in a manner not expected from their sentence and (2) "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  *See also Neal v. Shimoda*, 131 F.3d 818, 827-29 (9th Cir.1997).  *Sandin* "refocused the test for determining the existence of a liberty interest away from the wording of the prison regulations and toward an examination of the hardships caused by the prison's challenged action relative to 'the basic conditions' of life as a prisoner."  *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (quoting *Sandin*, 515 U.S. at 485).  When conducting the *Sandin* inquiry, courts should look to whether the sanctions will affect the length of the prisoner's sentence.  *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

As a result of Plaintiff's disciplinary hearing, the basis of his due process claim, Plaintiff had two forms of discipline imposed upon him: (1) he was assessed a 90-day forfeiture of credit; and (2) he was placed in administrative segregation.  (ECF No. 104 at 6.)  The loss of credit has been deemed a protectable liberty interest by some cases in the wake of *Sandin*.  *See e.g. Gotcher v. Wood*, 66 F.3d 1097, 1100 (9th Cir.1995); *Reynolds v. Wolff*, 916 F.Supp. 1018, 1023 (D. Nev., 1996).  However, if a prisoner is serving a life sentence, the loss of credits has never been held as a protectable liberty interest because the effect of the state action on the inmate's sentence is a key

component of the *Sandin* inquiry, and a loss of credit has no effect on a life sentence. *See Sandin*, 515 U.S. at 487 ("[n]or does [the inmate's] situation present a case where the State's action will inevitably affect the duration of his sentence.") *See also Bennett v. Curry*, No. C 07-2261 SI (PR), 2008 WL 2563223, at *5 (N.D. Cal. Jun. 23, 2008) ("[t]he time credit forfeiture imposed on Bennett did not inevitably affect the duration of his [life] sentence. Under the reasoning of *Sandin*, therefore, he had no protected liberty interest."); *Bonty v. Stevenson,* No. C 09–3838 LHK (PR), 2011 WL 2112432, at *2 (N.D. Cal. May 24, 2011) ("Plaintiff conceded that the thirty-day forfeiture of credit has no effect on the duration of his [life] sentence.") Because Plaintiff has a life sentence, he has no liberty interest in a loss of credits.

Moreover, Plaintiff has not alleged any facts arising from his placement in administrative segregation that satisfy the *Sandin* requirement of an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin* 515 U.S. at 484. Neither Plaintiff's Fourth Amended Complaint, nor his Opposition to Defendants' Motion to Dismiss, present any facts showing that the conditions of his confinement in administrative segregation amounted to "a major disruption in his environment" or were more burdensome than the conditions faced by the general population. *Id*. at 486. Plaintiff's placement in administrative segregation alone, without supplemental factual allegations, does not invoke a protected liberty interest necessary for a procedural due process claim. *Id*. *See also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir.1997) (holding that placement in administrative segregation is insufficient to state a due process claim); *Saenz v. Spearman*, No. 1:09-cv-0557 YNP PC, 2009 WL 3233799, at *9-11 (E.D.Cal. Oct.1, 2009) (finding that one-year confinement in administrative segregation did not, in and of itself, implicate a protected liberty interest); *Del Rio v. Schwarzenegger*, No. EDCV 09-214 TJH (MAN), 2009 WL 1657438, at *9 (C.D. Cal. June 10, 2009) (same). Because Plaintiff failed to allege the deprivation of a protected liberty interest, he has not established a prima facie procedural due process violation. Therefore, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Due Process claim be **GRANTED.**

///

///

# IV. CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that Defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part.  The court RECOMMENDS:

(1)    Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims unrelated to excessive force be **DENIED**.

(2)    Defendants' Motion to Dismiss Plaintiff's Eighth Amendment excessive force claim be **GRANTED** without prejudice.

(3)    Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claims as against all Defendants but Defendant Greenwood be **DENIED**.

(4)    Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim as against Defendant Greenwood be **GRANTED** without leave to amend.

(5)    Defendants' Motion to Dismiss Plaintiff's Due Process claim be **GRANTED** without prejudice.

If the Court adopts the aforementioned recommendations, Plaintiff's only remaining causes of action are any Eighth Amendment Claims against Defendants Rush, Barajas, Ibarra, Alderete, Lopez, Gonzalez, Rodriguez-Toledo, Martinez, Hernandez, Teeters, Nutt, and Rodiles that relates to deliberate indifference to Plaintiff's safety, and First Amendment retaliation claims against those same Defendants.

///
///
///
///
///
///
///
///
///
///

1    This Report and Recommendation will be submitted to the United States District Court judge

2    assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

3    objections with the Court and serve a copy on all parties on or before **July 20, 2011**.  This document

4    should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall

5    be served and filed no later than **August 5, 2011**.  *The parties are advised that no extensions of time*

6    *will be granted for purposes of filing objections*.  The parties are further advised that failure to file

7    objections within the specified time may waive the right to appeal the district court's order.

8    *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

9        **IT IS SO ORDERED.**

10   DATED:  June 20, 2011

11

12                                    _____
                                      LOUISA S PORTER
13                                    United States Magistrate Judge

14   cc:        The Honorable Janis L. Sammartino
                all parties
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -